1
2
3
4          UNITED STATES DISTRICT COURT
5          NORTHERN DISTRICT OF CALIFORNIA
6
7
8
9   CARLOS JAVIER AQUINO,                    No. C 10-4413 SI (pr)

10              Petitioner,                  **ORDER DENYING PETITION FOR**
                                             **WRIT OF HABEAS CORPUS AND**
11       v.                                  **DENYING CERTIFICATE OF**
                                             **APPEALABILITY**
12   A. LOPEZ, warden,

13              Respondent.
                                      /
14
15
16              **INTRODUCTION**

17          Now before the court for consideration is Petitioner Carlos Javier Aquino's <u>pro se</u> petition

18   for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 concerning his 2007 conviction in

19   Santa Clara Superior Court. For the reasons discussed below, Aquino's petition and a certificate

20   of appealability are denied.

21

22              **PROCEDURAL BACKGROUND**

23          On March 28, 2007, a jury convicted Aquino of the attempted murder of Anthony

24   Felardo, assault with a deadly weapon on Armando Chapa, and shooting at an occupied vehicle.

25   Clerk's Transcript (CT) 239-50. On June 12, 2007, Aquino was sentenced to 25 years to life

26   consecutive to a term of life in state prison. Reporter's Transcript (RT) 568-71. Aquino

27   appealed. On September 10, 2008, his conviction was affirmed by the California Court of

28   Appeal. Ex. 3. He did not petition for review in the California Supreme Court. Aquino filed

*United States District Court*
*For the Northern District of California*

1   a petition for a writ of habeas corpus in the Santa Clara County Superior Court. On December

2   11, 2009, in a written opinion, the Superior Court denied the petition. Ex. 4, In re Aquino, on

3   Habeas Corpus, No. CC503766 (Cal. Sup. Ct. 2009). He filed habeas petitions in the California

4   Court of Appeal and the California Supreme Court, which were summarily denied. Exs. 5, 6.

5        On September 30, 2010, Aquino filed a federal petition for a writ of habeas corpus. On

6   March 10, 2011, the Court issued an Order to Show Cause why relief should not be granted on

7   the claims of ineffective assistance of trial counsel and prosecutorial misconduct. On May 20,

8   2011, Respondent filed his answer and, on August 1, 2011, Aquino filed a traverse. The case

9   is now ready for review on the merits.

10

11                                   **STATEMENT OF FACTS**

12        The facts of the case were summarized by the California Court of Appeal as follows:

13        Anthony Felardo and Armando Chapa were heroin addicts who stole to support
          their habits. They used runners to purchase heroin from their source. At some
14        point, Felardo asked a runner to introduce him to the source so he could deal with
          the source directly. Defendant was the source. After making arrangements by
15        telephone, defendant drove a blue Chevy pickup truck to a rendezvous and met
          Felardo. Felardo and defendant discussed heroin prices. When Felardo
16        mentioned that he would consistently buy a lot of heroin, defendant lowered his
          price. When Felardo asked whether he could obtain heroin on credit, defendant
17        answered negatively and added that he would shoot Felardo if Felardo ever took
          heroin without paying for it. Thereafter, Chapa called defendant or defendant's
18        brother, Omar, at a cell phone number when the addicts needed heroin.
          Defendant, in turn, would send runners or go himself to meet and transact with the
19        two. Once, Felardo and Chapa were at a place where defendant's runners were
          selling heroin to others. They asked the runners for heroin on credit. The runners
20        refused, and an argument ensued. Felardo chased one of the runners to the
          runner's car, drew a knife, and demanded heroin. The runner gave Felardo heroin
21        worth $300. Two weeks later, Chapa was driving his car with Felardo as his
          passenger. The two saw defendant drive past them in the blue truck. When Chapa
22        later stopped at a traffic light, defendant pulled up from behind and stopped to the
          right about an arm's length from Felardo. Defendant had his left hand outside the
23        window. He then brought his right hand over, pointed a black 12-inch gun at
          Felardo, closed one eye, and shot Felardo in the neck. The bullet exited and
24        lodged in Chapa's arm. The bullet paralyzed Felardo from the shoulder down.
          Felardo has no hope to recover his neurologic function.
25

26   Ex. 3, People v. Aquino, H031818 (Cal. Ct. App. 2008) at 1-2.

27

28

                                             2

**JURISDICTION AND VENUE**

This court has subject matter jurisdiction over the petition for writ of habeas corpus under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged judgment occurred in Santa Clara County, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

**EXHAUSTION**

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. 28 U.S.C. § 2254(b), (c). State judicial remedies have been exhausted for the claims presented in the petition.

**STANDARD OF REVIEW**

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Greene v. Lambert, 288 F.3d 1081, 1088 (9th Cir. 2002). When confronted with such a decision, a federal court should conduct an "independent review of the record" to determine whether the state court's decision was an unreasonable application of clearly established federal law. Himes, 336 F.3d at 853; accord Lambert v. Blodgett, 393 F.3d 943, 970 n.16 (9th Cir. 2004).

When applying these standards, the federal court should review the "last reasoned decision" by the state courts. Avila v. Galaza, 297 F.3d 911, 918 n.6 (9th Cir. 2002). Because Aquino did not raise his habeas claims on direct appeal and the California Court of Appeal and the California Supreme Court summarily denied relief on Aquino's habeas petition, the only reasoned state court decision addressing the claims raised in this federal petition is the California Superior Court's December 11, 2009 opinion, which addressed many, but not all, of Aquino's habeas claims.

## DISCUSSION

A. Ineffective Assistance of Counsel

Aquino asserts several grounds for his claim of ineffective assistance of counsel.

1    The Sixth Amendment to the United States Constitution guarantees not only assistance,

2  but effective assistance, of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  The

3  purpose of the right is to ensure a fair trial, and the benchmark for judging any claim of

4  ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the

5  adversarial process that the trial cannot be relied on as having produced a just result."  Id.  To

6  prevail on an ineffective assistance claim, a habeas petitioner must show that (1) counsel's

7  performance was "deficient," i.e., his "representation fell below an objective standard of

8  reasonableness" under prevailing professional norms, id. at 687-88, and (2) prejudice flowed

9  from counsel's performance, i.e., that there is a reasonable probability that, but for counsel's

10  errors, the result of the proceedings would have been different, see id. at 691-94.

11    "A court considering a claim of ineffective assistance must apply a 'strong presumption'

12  that counsel's representation was within the 'wide range' of reasonable professional assistance."

13  Harrington v. Richter, __ U.S. __, 131 S. Ct. 770, 787 (2011) (quoting Strickland, 466 U.S. at

14  689).  The standards of both 28 U.S.C. § 2254(d) and Strickland are "highly deferential . . . and

15  when the two apply in tandem, review is doubly so."  Id. at 788 (quotation and citations omitted).

16  When § 2254(d) applies, "the question is not whether counsel's actions were reasonable.  The

17  question is whether there is any reasonable argument that counsel satisfied Strickland's

18  deferential standard."  Id.

19    A difference of opinion as to trial tactics does not constitute denial of effective assistance,

20  United States v. Mayo, 646 F.2d 369, 375 (9th Cir. 1981), and tactical decisions are not

21  ineffective assistance simply because in retrospect better tactics are known to have been

22  available.  Bashor v. Risley, 730 F.2d 1228, 1241 (9th Cir. 1984).  Tactical decisions of trial

23  counsel deserve deference when: (1) counsel in fact bases trial conduct on strategic

24  considerations; (2) counsel makes an informed decision based upon investigation; and (3) the

25  decision appears reasonable under the circumstances.  Sanders v. Ratelle, 21 F.3d 1446, 1456

26  (9th Cir. 1994).  Furthermore, trial counsel cannot be ineffective for failing to raise a meritless

27  motion.  Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005);  see, e.g., Hebner v. McGrath,

28

5

543 F.3d 1133, 1137 (9th Cir. 2008) (finding counsel's failure to object to admission of defendant's prior sexual misconduct as propensity evidence not ineffective where evidence would have been admitted to show common plan or intent).

### 1. Failure Adequately to Investigate

#### a. Jose Lopez

Aquino argues that counsel was ineffective for failing to investigate the fact that he was "set up" by jailhouse informant Jose Lopez or that Lopez was the person who shot Felardo.

Lopez was a jailhouse informant who gave police information about Felardo's shooting that led to evidence that was admitted at Aquino's trial. RT at 271. Lopez never testified at the trial. At some point before the trial, Lopez fled to Mexico. RT 364. The jury knew, from Officer Bertrand Milliken's testimony about his interview with Aquino after Aquino's arrest, that Aquino thought that the informant was trying to frame him for the shooting of Felardo. RT at 264. Aquino told Officer Milliken that the informant thought he had been arrested because of information that Aquino had given to the police and the informant was trying to get him back. Id. Counsel's cross-examination of Officer Milliken elicited the information that the police informant was Lopez. RT at 268. Counsel tried to continue questioning Officer Milliken about Lopez, but the court sustained the prosecutor's objection based on relevance. RT at 274. In a sidebar conference out of the hearing of the jury, the court stated, "There is absolutely nothing here that established enough connection between Sergio[1] and this incident to allow you to start getting into third party culpability." RT at 275.

A defense attorney has a general duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. Strickland, 466 U.S. at 691; Cullen v. Pinholster, __ U.S. __, 131 S. Ct. 1388, 1407 (2011). Strickland directs that "'a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" Silva v. Woodford, 279 F.3d 825, 836 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 691). When

---

[1]Sergio is another name for Lopez. RT at 264.

1   defense counsel is aware of what a witness will say, a claim of failure to investigate that witness

2   cannot establish ineffective assistance. Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001),

3   amended 253 F.3d 1150 (9th Cir. 2001).

4       The Santa Clara Superior Court rejected this claim as follows:

5       Petitioner first claims that trial counsel failed to adequately investigate evidence
    that Petitioner had been set up by the informant who told police that Petitioner was

6   the shooter and gave them Petitioner's cellular telephone number and license
    plate. Petitioner sets out the history of conflicts that he had with the informant in

7   an attempt, seemingly, to establish the informant's motive to lie. However, the
    informant was merely used by the police as a tool to uncover the evidence that

8   was admitted at trial, including the victim's identification of Petitioner. Thus, it
    would have been improper for trial counsel to attempt to show that the informant

9   set Petitioner up since it would not undermine the evidence of Petitioner's guilt
    that was brought before the jury.

10  Ex. 4, In re Aquino, No. CC503766 at 3-4.

11
12      Under both federal and California law, substantial evidence of third-party culpability

13  must link that third person directly with the actual commission of the offense before it can be

14  admitted at trial. Guam v. Ignacio, 10 F.3d 608, 615 (9th Cir. 1993) (evidence of third-party

15  culpability not admissible if it only presents a possible ground of suspicion, it must be coupled

16  with substantial evidence tending to directly connect that person with commission of the

17  offense); People v. McWhorter, 47 Cal. 4th 318, 367-68 (2009) ("In assessing an offer of proof

18  relating to such evidence, the court must decide whether the evidence could raise a reasonable

19  doubt as to defendant's guilt and whether it is substantially more prejudicial than probative under

20  Evidence Code section 352.").

21      Although Aquino claims that counsel failed to investigate evidence that Lopez framed

22  him, from counsel's cross-examination of Officer Milliken, it is clear that she knew of Aquino's

23  theory that Lopez framed him and attempted to get before the jury evidence incriminating Lopez.

24  The fact that the evidence was ruled inadmissible by the court does not show counsel's

25  performance was deficient. Counsel attempted to do exactly what Aquino claims she did not

26  do. Furthermore, counsel cannot be faulted for not investigating what she already was aware of.

27  Bragg, 242 F.3d at 1088. Therefore, counsel's performance in this regard was not deficient. The

28  California Superior Court's denial of this claim was not contrary to or an unreasonable

1  application of established federal law.

2              b. <u>Failure to Interview and Call Witnesses Verifying Lopez's Culpability</u>

3        Aquino faults counsel for not calling Luis Diez to testify. Aquino claims that Diez would

4  have testified about Lopez's framing Aquino, but that counsel refused to call Diez as a witness

5  "because she thought that Diaz looked like a 'gang-banger' and had a record." Petition at 19.

6  According to Aquino, counsel also failed to interview Eric Leon, an inmate at the county jail,

7  who allegedly had information about Lopez's set-up. The state Superior Court did not address

8  this claim; therefore, the Court reviews the record to determine if the state court's denial of this

9  claim was an objectively unreasonable application of established federal law.

10       As discussed above, the trial court had made it clear that evidence of Lopez's

11  involvement in the crime would not be admitted. The law required substantial evidence of

12  Lopez's culpability before any evidence implicating Lopez would be admitted. Counsel's

13  decisions not to interview Leon or to call Diez as a witness appear to be strategic decisions based

14  upon the law and the ruling of the trial court. Furthermore, a difference of opinion as to trial

15  tactics does not constitute deficient performance even if, in hindsight, a better decision would

16  have been preferable. <u>See</u> <u>id.</u> (when record shows counsel was well-informed, and defendant

17  fails to state what additional information would be gained by the discovery he claims was

18  necessary, an ineffective assistance claim fails). Therefore, the Court is satisfied that the state

19  court's denial of this claim was not an objectively unreasonable application of federal law.

20              c. <u>Failure to Interview Witness to Shooting</u>

21       Aquino claims counsel failed to investigate the person who reported hearing a gunshot,

22  who "made a statement to the police identifying the truck and its passenger as it left the area."

23  Petition at 20. However, Aquino does not identify which witness he wanted counsel to

24  investigate or what that person would say. The state Superior Court did not address this claim;

25  therefore, the Court reviews the record to determine if the state court's denial of this claim was

26  objectively unreasonable.

27       Officer Craig Johnson testified that he responded to a call about a shooting at a specific

28

location but, when he arrived at the location, there was no evidence of a shooting and no person to interview. RT at 46-47. Officer Johnson responded to a second call from a gas station about two bloody men who stopped to fill up for gas. RT at 47. The gas station attendant gave a description of the car the men drove and its license plate number. Id. Officer Johnson's testimony suggests that there was no witness to the shooting who could have provided exculpatory evidence. See Bragg, 242 F.3d at 1088 (claim of failing to investigate was speculative because petitioner failed to identify what witness would have said). Therefore, the state court's denial of this claim was not objectively unreasonable.

### d. Prejudice

Furthermore, the state Superior Court found that the evidence of Aquino's guilt would not have been undermined by any evidence about Lopez. Although the state court's finding was conclusory, a review of the record confirms that Aquino has failed to establish prejudice under Strickland.

Aquino emphasizes that no physical evidence linked him to the shooting because the gun and blue truck were not found. RT at 364. Nevertheless, the prosecutor's case against Aquino was strong. Felardo, one of the victims, testified that Aquino was the person who shot him. RT at 150, 155. The prosecutor asked Felardo, "Now it's been about a year and a half since that shooting. Has your mind changed? Has your memory faded? Do you recall now as you sit here today who shot you?" RT at 150. Felardo responded, "I'll never forget that for the rest of my life." Id. The prosecutor asked, "Who was the person who shot you that day at the intersection?" Felardo responded, "Carlos." Id. Felardo also identified Aquino sitting in the courtroom as the person who shot him. RT at 155. Although defense counsel presented an identification expert to undermine Felardo's identification of Aquino, Felardo's identification remained strong evidence against Aquino because Felardo knew Aquino from his drug dealings with him, had selected Aquino's photograph from a photographic lineup two weeks after the shooting and the shooting took place in the day time so Felardo was able to get a good look at the person who shot him. RT at 46; 254.

The prosecutor's case also included tapes of incriminating telephone calls that Aquino made to family members from jail, in which he acknowledged culpability for the shooting, made arrangements to fabricate an alibi and a bill of sale for the blue truck and made arrangements to destroy evidence.  RT at 333-64.  Additionally, there was evidence that the blue pickup truck, which matched the description of the truck that was driven by the shooter, was registered to Rosa Laos, Aquino's estranged wife.  RT at 236-37.  Although Laos testified that, sometime before the shooting took place, she sold the truck to a person who responded to the "for sale" sign she posted on the truck, she later admitted that she sold the truck to Lopez, who was known to Aquino and to his sister, Teresa Aquino.  RT at 215-19; 236-41; 314-16; 271-72; 420.  Laos had no documentation that she had sold the truck to Lopez, and the registration of the truck was never transferred out of her name.  RT at 218.  Therefore, Laos' credibility about the sale of the truck was called into question.

Furthermore, Aquino's alibi defense was weak.  Aquino's father, Javier Aquino, testified that, on the day of the shooting, Aquino was working with him fixing up an apartment for a company called University Group, LLC.  RT at 452.  However, the receipt that documented that Aquino was working did not have his name on it nor the specific dates that the work was performed.  RT at 452, 456.

Because the prosecutor's case against Aquino was strong, even if counsel was deficient in failing to investigate or present evidence regarding the witnesses described above, there is no reasonable probability that the result of the proceeding would have been different.  Therefore, the Superior Court's conclusion that the evidence about Lopez "would not undermine the evidence of Petitioner's guilt that was brought before the jury" was not an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

2. <u>Failure to Prepare for Motion in Limine and to Object</u>

Aquino claims that counsel was unprepared to argue her motion in limine to exclude his taped jailhouse conversations and to make certain objections.  The state Superior Court did not address theses claim; therefore, the Court reviews the record to determine if the state court's

10

1    denial of them was objectively unreasonable.

2         The record reflects that counsel submitted a written motion in limine to exclude the tapes

3    of Aquino's telephone conversations. CT at 118-19; RT at 15-20. At a discussion regarding the

4    motions in limine, the court indicated that the tapes contained highly relevant and incriminating

5    material, but said it would consider counsel's motion further. RT at 19-20. After this

6    discussion, counsel filed a supplemental motion to exclude the tapes. CT at 135-39; RT at 35.

7    The court stated that it would review the authorities raised by counsel in her supplemental

8    motion and indicated that the prosecutor would have to lay the necessary foundation before the

9    tapes would be admitted. RT at 35. Aquino incorrectly characterizes the fact that counsel did

10   not argue her written motion as abandoning it. Petition at 20. The written motion was sufficient

11   to put counsel's arguments before the court. Even though the tapes were eventually admitted

12   into evidence, counsel cannot be faulted for not trying to have them excluded. Therefore,

13   counsel's performance was not deficient in this regard.

14        Aquino argues that counsel was ineffective for failing to object to the prejudicial effect

15   of having Felardo testify on a hospital bed and attached to respiratory devices. Petition at 21.

16   However, when Felardo was testifying, counsel asked the court to admonish the jury about being

17   influenced by sympathy for him. RT at 152. The court declined to give the admonition at that

18   time because it already had admonished the jury that morning and did not want to repeat it. RT

19   at 152; see RT at 40 ("Do not let bias, sympathy, prejudice or public opinion influence your

20   decision."). Therefore, counsel's performance was not deficient because she requested the exact

21   instruction that Aquino argues she should have requested. Furthermore, Aquino cannot show

22   prejudice because it can be presumed that the jury followed the court's original instruction. See

23   Weeks v. Angelone, 528 U.S. 225, 234 (2000) (jury is presumed to follow its instructions).

24        Aquino also argues that counsel failed to object to the prosecutor's introduction of

25   evidence of the .380 magazine found in his vehicle. Petition at 21. He contends that, at the

26   hearing on the motions in limine, the court ruled that this evidence would be excluded.

27   However, the trial court did not exclude this evidence but instead waited to rule on its

28

admissibility to determine if the prosecutor could lay the necessary foundation for it.  RT at 11-12.  Counsel did object when the prosecutor tried to elicit testimony regarding the .380 magazine from Officer Milliken.  RT at 257.  The objection was overruled because the prosecutor had laid the required foundation with Officer Johnson's testimony.  RT at 79.   Therefore, counsel's performance was not deficient in this regard.

The Court's independent review of the record shows that the state court's denial of these claims was not an objectively  unreasonable application of established federal law.

3. <u>Failure Adequately to Cross-Examine Prosecution Witnesses</u>

Aquino argues that counsel was unprepared to cross-examine Felardo because she failed to elicit testimony that he did not know Aquino's first name, never met Aquino, did not speak Spanish and misidentified the clothes that Aquino wore when he identified Aquino in court and she failed to investigate whether Felardo had vision problems.  Aquino also argues that counsel failed to challenge Officer Johnson's testimony concerning drug distribution in Santa Clara County, ballistics evidence and Felardo's ability to nod his head during his interview with Officer Johnson.

The state Superior Court denied this claim as follows:

> Petitioner claims that trial counsel ineffectively cross-examined Felardo and did not adequately challenge the expert testimony of Officer Johnson on the matter of drug distribution in Santa Clara County.  Once again, Petitioner has not established prejudice.  The inconsistencies pointed out in Felardo's testimony are of limited probative value when compared to Felardo's testimony as a whole.  In addition, the majority of these inconsistencies related to Felardo's identification of Petitioner as the assailant.  Trial counsel significantly questioned the accuracy of Felardo's identification and went so far as to call an expert in the field of eyewitness identification.  Despite trial counsel's efforts, the jury ultimately accepted the evidence that Petitioner was the shooter, which included but was not limited to Felardo's identification.  Given the weight of the evidence, it is implausible that the result of the trial would have been more favorable had trial counsel asked the few additional questions suggested by Petitioner's claim.
>
> With regards to the testimony of Officer Johnson, Petitioner has not established that his testimony would have been excluded if trial counsel had objected as Petitioner suggests.  Finally, Petitioner cannot show that the result would have been different even if Officer Johnson's testimony regarding the caliber of handgun used in the shooting had been excluded since what type of gun was used in the assault was of marginal relevance when compared to the bigger question of who pulled the trigger.  Given the substantial evidence identifying Petitioner as the shooter, this court cannot say that the exclusion of Officer Johnson's testimony

on the caliber of gun used would undermine confidence in the jury's verdict.

Ex. 4, In re Aquino, No. CC503766 at 5-6.

In cross-examining Felardo, counsel brought out the following testimony:  that he had taken heroin three hours prior to the shooting, RT at 156; that he associated a blue pickup truck with Aquino because, in the past, Aquino drove a blue pickup truck to their meetings, id.; that the first time he ever mentioned Aquino threatening to shoot him if he stole from Aquino was at the trial, he never had mentioned this to the police or at the preliminary hearing, RT at 156-57; and that his memory of everything after he got shot was very foggy, RT at 157-58.  Because counsel effectively cross-examined Felardo, the fact that she did not ask him the specific questions that Aquino suggests does not mean that her performance was deficient.  See Mancuso v. Olivarez, 292 F.3d 939, 955 (9th Cir. 2002) (petitioner's suggestions regarding how counsel might have handled witness's cross-examination differently are insufficient to support claim of ineffective assistance of counsel).  Furthermore, as stated by the state court, Aquino has not established prejudice; given the weight of the evidence identifying Aquino as the shooter, it is not probable that the result of the trial would have been different had counsel asked Felardo the questions Aquino suggests here.

In regard to Officer Johnson's testimony, Aquino fails to indicate how the testimony to which he thinks counsel should have objected prejudiced his case.  As indicated by the state court, the evidence to which Aquino objects has marginal inculpatory value when compared to the question of who shot Felardo.  The state court reasonably concluded that Aquino failed to establish prejudice due to any deficient performance on the part of counsel in her cross-examination of Officer Johnson.

4.  Failure to Object to Hearsay Testimony

Aquino argues that counsel should have made a hearsay objection to Officer Johnson's testimony relating how he came to investigate Aquino for the crimes charged against him. Aquino contends that Officer Johnson used this information to vouch for the truthfulness of his results in determining that Aquino was the shooter.  Petition at 24 (citing RT 310).

The testimony to which Aquino objects is as follows:

Q: Did you have more information at that time [August 27, 2005 meeting with Felardo in hospital] as to the actual name of the suspect.

A: I have to refer for August 27, 2005. I need to refer to my report.

Q: Yes, please. To refresh your recollection.

A: August 27, 2005, yes. I had information – I had a name of the suspect at that date.

Q: You had a first and last name?

A: Yes, I did.

Q: How did you obtain this information?

A: I received an investigative lead from the jail.

Q: Did this person indicate to you the name of the person who was responsible for the shooting that occurred against Mr. Felardo?

A: Yes.

Q: And did he give you any other information such as a license plate number?

A: Yes, he did.

Q: And what was that license place number to?

A: It was to a white Ford Explorer.

Q: Did you take – what did you do with the information as far as the name of the person that may be involved?

A: I took that name and I ran it through our San Jose Police Department database and obtained a photograph of the suspect and all his information.

Defense Counsel: Objection, Your honor, goes against discovery order.

Court: The objection is sustained. The question and answer are ordered stricken beginning, "What did you do with that information?"

RT at 309-10.

The state Superior Court denied this claim as follows:

Petitioner complains that trial counsel did not object to Officer Johnson's recitation of how he came to investigate Petitioner for the offenses in this case.

14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> Petitioner's claim lacks merit.  Officer Johnson's statement that the informant gave him Petitioner's name was not hearsay as it was not admitted for the truth of the informant's statement: that Petitioner was the assailant.  Rather, the statement was admitted to show why Officer Johnson's investigation focused on Petitioner.

Ex. 4, In re Aquino, No. CC503766 at 6.

As indicated by the state court, Officer Johnson's testimony was admitted to show how the police investigation focused on Aquino, not to establish that Aquino was the perpetrator. Evidence that is not admitted to prove the truth of the matter asserted is not hearsay.  Fed. R. Evid. 801(c).  Aquino's argument that this evidence was used to vouch for the truthfulness of Officer Johnson's results is without merit.  Aquino's name is not even mentioned in this part of Officer Johnson's testimony.  Because Officer Johnson's testimony was not hearsay, counsel was not ineffective for failing to object on this basis.  See Juan H, 408 F.3d at 1273 (counsel cannot be faulted for failing to raise a meritless issue).  Furthermore, counsel did object based on the discovery order, and this objection was sustained by the court.  This again shows that counsel's performance was not deficient.  Therefore, the state court's denial of this claim was not unreasonable.

5. Failure to Object Based on Right to Confront Witnesses

Aquino argues that counsel should have objected based on his right to confront Chapa and Lopez, "two of the most important witnesses in this case."  Petition at 24.  He also argues that counsel should have protested about the prosecution's lack of diligence in securing these two witnesses.  The state court did not specifically address this claim; therefore, this Court undertakes an independent review of the record.

Out-of-court statements by witnesses that are testimonial hearsay are barred under the Confrontation Clause unless (1) the witness is unavailable, and (2) the defendant had a prior opportunity to cross-examine the witness.  Crawford v. Washington, 541 U.S. 36, 59  (2004).

Here, Crawford is not applicable because there were no testimonial out-of-court statements made by these witnesses that were admitted into evidence.  Further, the record shows that both witnesses were unavailable.  Lopez fled to Mexico, RT at 364, and Chapa disappeared after he left the hospital, RT at 233.  There is no evidence that the government caused these

15

witnesses to be unavailable.  Indeed, there is evidence that the police attempted to locate Chapa. RT at 233.   Because an objection based on <u>Crawford</u> or on the government's lack of diligence in locating these witnesses would not have been sustained, counsel's performance was not deficient for failing to object on this basis.  The Court is satisfied, after an independent review of the record, that the state court's denial of this claim was not an unreasonable application of established federal authority.

### 6. Pressuring Aquino Not to Testify

Aquino argues that counsel persuaded him not to testify even though his testimony would have explained that his statements in the taped jailhouse conversations, which the prosecution used to show that he was trying to cover up evidence of this crime,  had nothing to do with this crime, but with drug evidence that he did not want the police to find.  Aquino also wanted to testify so that  the jury would hear his theory that Lopez was the shooter.[1]

The <u>Strickland</u> standard applies when a petitioner claims ineffective assistance of counsel based on denying him his constitutional right to testify.  <u>Matylinsky v. Budge</u>, 577 F.3d 1083, 1097 (9th Cir. 2009).  Counsel's legal advice concerning the defendant's exercise of his right to testify, absent coercion, does not constitute ineffective assistance, but rather discharges counsel's ethical responsibility to inform the accused of  the consequences of such a decision. <u>Lema v. United States</u>, 987 F.2d 48, 52 (1st Cir. 1993).  Where, on advice of counsel, a defendant knowingly and voluntarily, if reluctantly, decides not to testify, no constitutional error occurs.  <u>Id.</u>

The facts regarding this claim are as follows.  The trial court asked defense counsel if Aquino intended to testify.  RT at 469.  Counsel replied that she still was not clear if Aquino wanted to testify but, if he decided not to testify, she would ask the court to do a voir dire of his decision.  RT at 469-70.  The court addressed Aquino, stating:

> Mr. Aquino, I know I have said this to you at least twice before.  The decision about whether or not you take the stand and testify is your decision.  It's your right

---

[1]The court had indicated that the evidence regarding Lopez's alleged culpability would be admitted if Aquino testified.  RT at 275.

to testify.  It is your right not to put yourself on the stand and be subject to questioning and cross examination by the district attorney.  However you decide, that decision will be abided by your attorney and this Court.  But you must make that decision.  You have had several days.  I know you have been talking with your attorney about this and thinking it over.  We can't further delay the proceedings for purposes of you to make that decision. . . . I'm going to leave the bench at this time.  I'm going to come back at 9:30.  And I'm going to ask you this question again and then we are going to summon the jury.

RT at 470-71.

> After a short break, the following colloquy took place:
>
> Court: Ms. Dell, how do you wish to proceed?
>
> Counsel: At this point I don't plan on calling any further witnesses other than my client, if he chooses to testify.
>
> Court: Mr. Aquino, what's your decision in that regard?
>
> Counsel: It has been my recommendation that we let the case rest as it is.
>
> Aquino: No.
>
> Court: You don't want to testify?
>
> Aquino: No.
>
> Court: All right.  Let's call for the jury.

RT at 471-72.

> The state Superior Court denied this claim as follows:
>
> Petitioner next contends that he informed trial counsel at the outset of trial that he wanted to testify on his own behalf.  According to Petitioner, it was only under trial counsel's duress that he was "forced to forfeit his right to testify."  Yet Petitioner's claim is not supported by the record.  The trial court addressed Petitioner and told him that he "was the person who has the right to make the decision whether to testify or to not testify."  Shortly thereafter, the court asked Petitioner if he wanted to testify and Petitioner said no.  Based upon the record, it appears that Petitioner's decision not to testify was not unduly influenced by trial counsel.  Thus, Petitioner's claim regarding his decision not to testify is unsubstantiated and contradicted by the record.

Ex. 4, In re Aquino, No. CC503766 at 4.

The record shows that Aquino had many discussions with his counsel regarding the consequences of his testifying.  Although counsel advocated in favor of Aquino's not testifying, both counsel and the court informed Aquino that whether he testified was his decision.  Therefore, when Aquino told the court that he had decided not to testify, he did so knowingly

17

1    and voluntarily.  Thus, counsel's performance was not deficient on this basis.  The state court's

2    denial of this claim was not an unreasonable application of federal law or an unreasonable

3    determination of the facts in light of the evidence presented in the state court proceeding.

4               7. <u>Failing to Challenge Prosecutor's Alleged Intimidation Tactics</u>

5            Aquino argues that counsel should have sought a hearing on the prosecutor's intimidation

6    tactic of threatening to prosecute certain defense witnesses if they lied on the witness stand.

7    Aquino submits a declaration from Rosa Laos, in which she states that the prosecutor told her

8    that, if she did not tell the truth, he would put her in jail and take custody of her son.  Petition,

9    Ex. B.  She states that, although she testified to the truth, she was uncomfortable on the witness

10   stand because she thought the prosecutor would take her son.  <u>Id.</u>  Aquino also submits the

11   declaration of Maria de Los Angeles Cadillo, who declares that she was present when the

12   prosecutor threatened Laos to frighten her into not testifying. Petition, Ex. B.  Aquino contends

13   that counsel should have investigated the extent of the prosecutor's intimidation of Laos and

14   have made a request for admonition so as to preserve the claim for appeal.  He also contends that

15   the prosecutor threatened to charge his father, brother and sister with destruction of property, but

16   acknowledges that counsel brought this to the attention of the court.

17           The state Superior Court denied this claim as follows:

18           Petitioner's next contention is that trial counsel was ineffective for failing to
        challenge prosecutor's alleged misconduct of threatening to prosecute certain
19      defense witnesses if they lied on the witness stand.  Even if this court were to
        assume that the misconduct Petitioner alleges actually took place, Petitioner
20      cannot establish prejudice.  The record reflects that trial counsel was able to set
        forth Petitioner's defense unabated by any alleged misconduct.
21

22   Ex. 4, <u>In re Aquino</u>, No. CC503766 at 4-5.

23           The state court's denial of this claim was reasonable.  First, counsel did bring to the

24   court's attention the possibility that the prosecutor might have intimidated Laos.  RT at 204.

     Therefore, counsel's performance was not deficient.   Second, although Laos testified for the
25
     prosecution, her testimony was mostly favorable to Aquino.  Thus, Aquino cannot show
26
     prejudice under <u>Strickland</u> because, assuming the prosecutor made the alleged statement and
27
     counsel did not object, it is not reasonably probable that, but for counsel's failure to object, the
28

1   result of the proceeding would have been different.

2       Assuming Aquino is claiming ineffective assistance based on the prosecutor's alleged

3   intimidation of his father, brother and sister, the claim fails because counsel brought the

4   prosecutor's conduct to the court's attention, RT at 122-23, 204, and because the witnesses'

5   testimony was favorable to Aquino.  RT at 166-73 (Javier Aquino); 418-21 (Teresa Aquino);

6   449-56 (Javier Aquino).[2]

7       In summary, the state court's denial of Aquino's ineffective assistance of counsel claims

8   was not contrary to or an unreasonable application of established federal authority and its

9   determination of the facts was not unreasonable in light of the evidence in the state court record.

10  Accordingly, habeas relief on the claim of ineffective assistance of counsel is denied.

11

12  B. Prosecutorial Misconduct

13      Aquino presents several grounds to support his claim that the prosecutor committed

14  misconduct.

15      A defendant's due process rights are violated when a prosecutor's misconduct renders a

16  trial "fundamentally unfair."  Darden v. Wainwright, 477 U.S. 168, 181 (1986).  Under Darden,

17  the first issue is whether the prosecutor's remarks were improper; if so, the next question is

18  whether such conduct infected the trial with unfairness.  Tan v. Runnels, 413 F.3d 1101, 1112

19  (9th Cir. 2005).  Factors which the court may take into account in determining whether

20  prosecutorial misconduct rises to the level of a due process violation are (1) the weight of the

21  evidence of guilt, see United States v. Young, 470 U.S. 1, 19 (1985); (2) whether the misconduct

22  was isolated or part of an ongoing pattern, see Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir.

23  1987); (3) whether the misconduct related to a critical part of the case, see Giglio v. United

24  States, 405 U.S. 150, 154 (1972); and (4) whether the prosecutor's comment misstated or

25  manipulated the evidence, see Darden, 477 U.S. at 182.

26

27  ───────────────

28      [2]The testimony of Aquino's brother, Omar Aquino, was stricken by the trial court.  RT at 199.

### 1. Intimidation of Witnesses

Aquino argues that the prosecutor improperly threatened Laos and Aquino's brother, Omar Aquino, so that Laos felt uncomfortable as she was testifying and kept thinking the prosecutor would take her son from her and Omar Aquino took the Fifth Amendment and his forty-five minute testimony had to be stricken.

The state Superior Court denied this claim as follows:

> Petitioner's claim of prosecutorial misconduct rests upon the claim that the prosecutor intimidated defense witnesses . . . . [This] claim fails.
>
> First, the two witnesses who were allegedly intimidated by the prosecutor both testified. While both now claim to have been nervous on the witness stand, neither state that their testimony would have been materially different had they not been intimidated. As such, even if this Court were to accept the truth of the statements of Petitioner's family members, Petitioner has not established that he was prejudiced by any conduct of the prosecutor.

Ex. 4, In re Aquino, No. CC503766 at 6-7.

As discussed above, even if the prosecutor attempted to intimidate Laos and Omar Aquino, they both testified. Laos' testimony was favorable to the defense. RT at 205-24. Omar Aquino invoked his right against self-incrimination not because the prosecution threatened or intimidated him, but because he had to stop talking about his drug dealing and other criminal activities. RT at 118-19. Before invoking his Fifth Amendment rights, Omar Aquino testified that Aquino did maintenance work with his father. RT 97-102.

Because both witnesses testified in his favor, Aquino fails to establish prejudice. The alleged misconduct did not infect the trial with unfairness because it was not part of a repeated pattern, it did not misstate the evidence and, as discussed above, the evidence of guilt was strong. Therefore, the state court's denial of this claim was not unreasonable.

### 2. Improperly Called Laos a Liar During Closing Argument

Aquino argues that the prosecutor, during his closing argument, improperly called Laos a liar. The state Superior Court did not address this claim; therefore, the Court undertakes an independent review of the record to determine if the state court's decision was an unreasonable application of established federal law.

20

A prosecutor's statements, in closing argument, about a witness's credibility, are proper if they are based on the evidence.  United States v. Moreland, 622 F.3d 1147, 1161 (9th Cir. 2010).

During his closing argument, the prosecutor stated:

> We know that Rosa Laos lied on the stand.  You know that because – not just because the character of her testimony, but you also know that because jailhouse calls were intercepted, jailhouse calls between Carlos Aquino and his brother instructing his brother to make sure Rosa gets her story straight before the cops get out there.  Make sure she tells the cops that we sold the truck three months prior, sometime in June.

RT at 505.

The prosecutor's statement about Laos did not constitute misconduct because it was based on the evidence before the jury.  Therefore, the state court's denial of this claim was not objectively unreasonable.

### 3. Failure to Secure Important Defense Witnesses

Aquino argues that the prosecutor committed misconduct by failing to secure the attendance of Chapa and Lopez.  The state Superior Court denied the claim regarding Lopez stating, "[T]he informant was not a material witness to the case since the evidence that was introduced against Petitioner came from independent sources."

As discussed above, there is no evidence that the prosecutor caused the disappearance of Lopez or Chapa.  To the contrary, there is evidence that the police attempted to find Chapa.  Therefore, this claim fails because Aquino has not shown any conduct on the part of the prosecutor that can be construed to be misconduct.  Furthermore, as indicated by the state court, Lopez was not a material witness to the case, so that his absence was not prejudicial to Aquino.  The state court's denial of this claim was not  unreasonable.

### 4. Asking Felardo Leading Questions

Aquino argues that the prosecutor improperly asked leading questions of Felardo, who testified for the prosecution.  The state Superior Court did not address this claim; therefore, the Court undertakes an independent review of the record to determine if the state court's decision was an unreasonable application of established federal authority.

21

1   Improper questioning of a witness by the prosecutor is not alone sufficient to warrant

2   reversal. Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998). Rather, the relevant inquiry on

3   habeas is that dictated by Darden, 477 U.S. at 181, i.e., whether the prosecutor's behavior so

4   infected the trial with unfairness as to make the resulting conviction a denial of due process.

5   Ortiz, 149 F.3d at 934. In considering whether the questioning deprived the defendant of a fair

6   trial, the witness' testimony should be viewed as a whole to determine the impact of the improper

7   questioning. Id. at 934-35. At times, leading questions are necessary to develop a witness's

8   testimony. United States v. Archdale, 229 F.3d 861, 866 (9th Cir. 2000).

9   The Court has reviewed the prosecutor's questioning of Felardo, RT at 123-54, and finds

10  nothing that would have caused Felardo to testify untruthfully or that would cause unfairness to

11  Aquino. Thus, the prosecutor's questions did not constitute misconduct and, even if they did,

12  Aquino has not shown that they caused him prejudice. Therefore, the state Superior Court's

13  denial of this claim was not objectively unreasonable.

14  In sum, the state Superior Court's denial of Aquino's claims was not contrary to or an

15  unreasonable application of established Supreme Court authority nor was it an unreasonable

16  determination of the facts in light of the evidence presented in the state court proceeding.

17  Furthermore, this Court's independent review of the record finds that the state court's denial of

18  the claims it did not specifically address was not an objectively unreasonable application of

19  established federal authority. Therefore, the petition for a writ of habeas corpus is denied.

20

21  C. Certificate of Appealability

22  A Certificate of Appealability is denied. See Rule 11(a) of the Rules Governing Section

23  2254 Cases. Aquino has not made "a substantial showing of the denial of a constitutional right."

24  28 U.S.C. § 2253(c)(2). Nor has Aquino demonstrated that "reasonable jurists would find the

25  district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel,

26  529 U.S. 473, 484 (2000). Aquino may not appeal the denial of a Certificate of Appealability

27  in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal

28

1    Rules of Appellate Procedure.  See Rule 11(a) of the Rules Governing Section 2254 Cases.

2        The Clerk is directed to enter Judgment in favor of Respondent and against Aquino,

3    terminate any pending motions as moot and close the file.

4

5                                    **CONCLUSION**

6        For the foregoing reasons,  the petition for writ of habeas corpus is denied.  The clerk

7    shall enter judgment and close the file.

8        IT IS SO ORDERED.

9

10   DATED: November 28, 2012            _____
                                           SUSAN ILLSTON
11                                         United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23